UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G & G Closed Circuit Events, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Steven C. Olson and Jackie Olson, individually and d/b/a Mike's BBQ; and Mike's BBQ, Inc., an unknown business entity d/b/a Mike's BBQ,<br><br>Defendants. | Case No. 20cv02119-LAB-BGS<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSAL [DKT. 9]** |

This case arises out of the unauthorized exhibition of a professional boxing match. Plaintiff G & G Closed Circuit Events, LLC ("Plaintiff"), the commercial distributor of the program, filed suit against Defendants Steven C. Olson and Jackie Olson, individually, and d/b/a Mike's BBQ (collectively "Defendants"), for displaying the program at their establishment without paying the proper licensing fee. Defendants have filed a Motion for Partial Summary Judgment on Complaint Counts I and II and Rule 12(b)(1) Dismissal of State Law Counts III and IV ("Motion"). (Dkt. 9 ("Mot.").) The Court has considered the papers filed in support of and in opposition to the Motion. The Court **GRANTS** Defendants' motion for summary judgment on all federal causes of action and **DECLINES** supplemental

jurisdiction as to the remaining state law claims, which the Court **DISMISSES WITHOUT PREJUDICE**.

## I. BACKGROUND[1]

Plaintiff is a commercial distributor and licensor of sporting events. Plaintiff was granted the exclusive nationwide commercial distribution rights to the "Saul 'Canelo' Alvarez v. Sergey Kovalev" championship fight program (the "Program"), which was broadcast on November 2, 2019, at Defendants' establishment, Mike's BBQ, located at 1356 West Valley Parkway, Escondido, CA 92029.[2] (Dkt. 10-1, Joint Statement of Undisputed Facts ("JSUF") ¶¶ 1, 9.) On the date in question, Defendants accessed the Program using an "internet streaming service[ ]" application, called DAZN, which they downloaded onto their Amazon Fire TV Stick ("Fire Stick") and broadcast onto the televisions in their establishment.[3] (Dkt. 9-2,

---

[1] To the extent that Plaintiff objects to the evidence produced by Defendants in support of their Motion, those objections are **OVERRULED** as moot because the Court doesn't rely on the objected-to evidence in ruling on Defendants' Motion.

[2] The Court **GRANTS** Plaintiff's request for judicial notice of the California Secretary of State business profile for Mike's BBQ, as attached as Exhibit 1 to Plaintiff's Request for Judicial Notice. (Dkt. 11-2, Request for Judicial Notice ("RJN"), Ex. 1.) A court may take judicial notice of matters of public record if those facts are not subject to reasonable dispute. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

[3] Plaintiff requests that the Court take judicial notice of the DAZN Terms of Use. However, as explained herein, the Court doesn't reach a determination of whether Defendants complied with these terms, and in addition to not finding the Terms of Use the proper subject of judicial notice, the Court does not consider this document relevant to its present assessment of the issues. Therefore, the Court **DECLINES** to take judicial notice of this document. The Court similarly **DECLINES** to take judicial notice of the DAZN Frequently Asked Questions on the DAZN website because, although websites are typically the proper subjects of judicial notice, the

Declaration of Steven C. Olson ("Olson Decl.") ¶ 17; Dkt. 11-1, Affidavit of Nicolas J. Gagliardi ("Gagliardi Aff.") ¶ 13(D).) Plaintiff contends that it had an agreement with DAZN which granted Plaintiff the exclusive commercial distribution rights to the Program and limited DAZN's internet rights to residences. (Gagliardi Aff. ¶ 5.)

In support of its Opposition to the Motion, Plaintiff attaches the affidavits of two of its investigators, Kevin Karlach and Rudy M. Gubach, who both visited Mike's BBQ on November 2, 2019. (Dkt. 11-3, Affidavit of Kevin Karlach ("Karlach Aff."); Dkt. 11-4, Affidavit of Rudy M. Gubach ("Gubach Aff.").) These affidavits offer some conflicting information. Karlak entered the establishment at 10:18 pm without paying a cover charge. (Karlak Aff. at 1.) He observed 20 televisions in the restaurant. (*Id*.) But while he states that he observed the Program playing on a few of the televisions, which had the DAZN watermark and logo clearly displayed on the screens, it's unclear whether the Program was playing on all 20 televisions. (*Id*.) In the three minutes that Karlak was present at Mike's BBQ, which has an approximate capacity of 300 people, he conducted three headcounts of 85 people each. (*Id*.) Gubach, on the other hand, arrived earlier at 7:05 pm and paid $10.00 to enter the establishment.[4] (Gubach Aff. at 1.) He counted 13 televisions, of which only 3 displayed the DAZN boxing Program. (*Id*.) Gubach appears to only have viewed the undercard event, not the main match between Canelo and Kovalev. (*Id*.) During the 25 minutes Gubach was there, he conducted three headcounts of 88, 87, and 89 patrons in the establishment. (*Id.* at 2.)

On October 29, 2020, Plaintiff commenced this action against Defendants, alleging violations of 47 U.S.C. §§ 605 and 553, conversion, and violation of

---

Court doesn't consider it relevant to the Court's analysis in this Order.

[4] Gubach states that when he arrived, the hostess informed him that the Program was sold out and the tables were reserved. (Gubach Aff. at 1.) One of the patrons at Mike's BBQ then sold Gubach a seat and gave him a wristband needed to enter the bar area where the Program was being displayed. (*Id.*)

California Business and Professions Code §§ 17200, *et seq*. In response, Defendants filed the present Motion.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(a) where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* at 324. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986). On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 242.

The Court does not make credibility determinations or weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, the Court determines whether the record "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III.    DISCUSSION

As an initial matter, Plaintiff requests that the Court deny Defendants' motion

for summary judgment as premature given that no discovery has been conducted in this case to date. (Dkt. 11 at 5–6.) Rule 56(b) allows a party to file a motion for summary judgment "at any time until 30 days after the close of all discovery." Although the rule also allows the court to deny the motion or order a continuance for the opposing party to pursue discovery, doing so is only necessary where additional discovery that could preclude summary judgment is needed. Fed. R. Civ. P. 56(d) ("If a nonmovant shows . . . it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations to take discovery; or (3) issue any other appropriate order."). Such is not the case here.

In the declaration accompanying its Opposition, Plaintiff lists various information it hopes to elicit from Defendant in discovery. (Dkt. 11-3 ¶ 15(a)–(o).) But this information is peripheral and not essential to the resolution of the narrow issue that is the subject of the present Motion. The critical fact here is that Defendants used the internet to access the Program on the date in question. Defendants admit in their affidavit that they used the DAZN internet streaming service to access the Program (Olson Decl. ¶ 17), a fact corroborated by Plaintiff's own investigators (Karlak Aff. at 1; Gubach Aff. at 1), and supported by Plaintiff's acknowledgment that DAZN is an "internet based service[ ]" (Gagliardi Aff. ¶ 13(D)). In its Opposition, Plaintiff doesn't actually dispute that Defendants used DAZN to access the Program, arguing just that there are some deficiencies with Defendants' evidence. (Opp. at 20.) Plaintiff makes a number of immaterial discovery requests, such as for account numbers and terms of service for Defendants' internet and television services providers and information related to how Defendants signed for their DAZN account. (Dkt. 11-3 ¶ 15.) But this information isn't essential for Plaintiff to oppose Defendants' Motion because it's unrelated to whether DAZN is an internet streaming service, a fact Plaintiff never actually disputes. Plaintiff also seeks discovery related to "[w]hether Defendants

did, in fact, have an account with DAZN," but Defendants' affidavit already provided this information. Plaintiff lists no other discovery request that would warrant the denial or continuance of Defendants' Motion.

Thus, the Court will analyze the narrow issue presented in Defendants' Motion based on the adequate record before it.

### A. Violations of 47 U.S.C. §§ 553 and 605

Defendants argue that they're entitled to summary judgment on Counts I and II based on the "internet defense," because the Program was streamed over the internet, and 47 U.S.C. §§ 553 and 605 apply only to radio, cable, and/or satellite. (Mot. at 7.) Defendants additionally argue that they're entitled to summary judgment for the following reasons: Plaintiffs' claims are barred by issue preclusion; Defendants' receipt of the Program from DAZN was authorized; and 47 U.S.C. § 605 doesn't apply to redistributed non-satellite signals. (*Id.* 9–14.) The Court addresses the internet defense first.

The Federal Communications Act ("Communications Act", 47 U.S.C. § 605 ("Section 605"), prohibits commercial establishments from intercepting and broadcasting to its patrons radio communications or satellite cable programming without authorization. *See Kingvision Pay–Per–View v. Guzman,* Case No. C–09–00217, 2009 WL 1475722, at *2 (N.D. Cal. May 27, 2009). Section 605 provides, in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or

>meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). In 1984, Congress specifically amended Section 605 and "added §§ 605(b)–(e) to curb 'the growing practice of individuals taking down satellite delivered programming for private, home viewing by means of privately owned backyard earth stations.'" *DirecTV, Inc. v. Webb*, 545 F.3d 837, 843 (9th Cir. 2008) (quoting 1984 U.S.C.C.A.N. 4655, 4745). Likewise, the Cable Television Consumer Protection and Competition Act ("Cable Act"), 47 U.S.C. § 553 ("Section 553"), prohibits "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator." 47 U.S.C. § 553(a).

Defendants contend that summary judgment is appropriate because Sections 605 and 553 don't extend to internet broadcasts. Defendants admit, and Plaintiff's investigations confirm, that Defendants accessed the Program on November 2, 2019, via DAZN, which is an internet streaming service. Specifically, Defendants downloaded the Program onto their Fire Stick using the DAZN application. They then used that Fire Stick to display the Program on various television screens at Mike's BBQ. This entire process involved using the internet, and at no point did it involve the use of radio, satellite, or cable television. And neither party makes any allegation that the DAZN service implicates radio, satellite, or cable signals.

Defendants cite to several cases in the Ninth Circuit that support the internet defense and confirm that the relevant statutes don't apply to transmissions made using the internet. *See, e.g., G & G Closed Cir. Events, LLC v. Rojas*, No.

EDCV1800438WDKJC, 2020 WL 7861979 (C.D. Cal. Oct. 5, 2020) ("The Court finds that the [ ] statutory language is unambiguous and does not support an interpretation that includes signals besides radio, satellite, and cable."); *G & G Closed Cir. Events, LLC v. Espinoza*, No. CV 18-07894 WDK-JC, 2020 WL 7861971, at *1 (C.D. Cal. Oct. 5, 2020) (same); *J & J Sports Prods., Inc. v. Gebreyesus*, No. CV 13-09087 WDK-PLA, 2016 WL 7638191, at *4 (C.D. Cal. Oct. 18, 2016), *vacated on other grounds,* 2018 WL 3738957 (C.D. Cal. Apr. 9, 2018) ("[T]he Court declines to extend the interpretation of the relevant statutes to include unauthorized broadcasts via the internet. Other courts within the Ninth Circuit have reached similar conclusions."); *Joe Hand Promotions Inc. v. Spain*, No. CV-15-00152-PHX-SMM, 2016 WL 4158802, at *4 (D. Ariz. Aug. 5, 2016) ("The Court finds that Sections 605 and 553 are inapplicable in this case. These statutes, originally enacted in 1934, were intended to prevent pirate interception of radio, satellite, and cable signals.").

Plaintiff asks the Court to decline to follow this case law and suggests that the Court adopt a more expansive view in its statutory interpretation of Sections 605 and 553. (Mot. at 6–10.) But the intent of Congress was clear in its enactment of, and later amendments to, the Communications Act and Cable Act: Section 605 applies to communications received via radio or satellite broadcast, and Section 553 applies to cable broadcast. *See DirecTV, Inc. v. Webb*, 545 F.3d 837, 843 (9th Cir. 2008) (acknowledging that "Congress in 1984 amended and supplemented the Communications Act" with § 605(a) to address satellite television signal piracy in addition to the unauthorized receipt and use of radio communications); *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 632 (1994) ("Congress enacted the 1992 Cable Act after conducting three years of hearings on the structure and operation

8

20cv02119-LAB-BGS

of the cable television industry.").[5] While the Court agrees that the overarching purpose of the Communications Act and Cable Act is to curb piracy, the Court declines to expand the scope of the statutes to include internet streaming, particularly where these statutes are unambiguous in their text. It is not the Court's responsibility to read into legislation what is not written. *See Connecticut National Bank v. Germain*, 503 U.S. 249, 253–254 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there . . . When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (internal citations and quotation marks omitted). As one Court noted, "although the internet has been in wide usage since the mid-1990s, the legislature has not extended the reach of the statutes to include transmissions via the internet and it is not the purview of the district court to insert itself and make this determination." *J & J Sports Productions, Inc. v. Thompson*, No. ED-CV-1601939-WDK-PLA, 2019 WL 13039884, at *4 (C.D. Cal. Sept. 20, 2019).

Thus, because the Court finds the internet defense to be valid and there are no genuine issues of fact material to that defense, Defendants' motion for summary judgment as to Counts I and II is **GRANTED**. Given that the Court has concluded that Defendants' summary judgment motion succeeds on the internet defense, the

---

[5] The Ninth Circuit also recognizes the inherent differences between cable and satellite broadcast. Cable television typically relies on "cable or optical fibers strung aboveground or buried in ducts to reach the homes or businesses of subscribers." *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1147 n.3 (9th Cir. 2019) (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 627 (1994)) (internal quotations omitted). Satellite television signals, on the other hand, "are broadcast through the air and can be received—or intercepted—by anyone with the proper hardware." *DirecTV, Inc.*, 545 F.3d at 841. These clear distinctions lend to the Court's conclusion that Sections 553 and 605 were each intended to target specific means of signal transmission and were not meant to each apply to any and all methods of communication.

Court need not reach Defendants' remaining arguments in favor of summary judgment.

### B. Supplemental Jurisdiction Over Remaining State Law Claims

The Court hasn't considered the merits of Plaintiff's state law claims that remain pending in this action. The Court's jurisdiction in this case is predicated on the existence of claims arising under federal law, namely 47 U.S.C. §§ 553 and 605. A district court "'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)). Because the Court has granted summary judgment as to both the Section 553 and Section 605 claims over which it has original jurisdiction, it has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). The Court exercises that discretion here and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims for conversion and for violation of California Business and Professions Code section 17200.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's federal claims, and **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state law claims, which are **DISMISSED WITHOUT PREJUDICE**. Accordingly, this Order disposes of all claims and concludes the litigation in the matter. The Clerk of Court is instructed to enter judgment in favor of Defendants on Counts I and II and terminate the case.

//
//

**IT IS SO ORDERED.**

Dated: September 20, 2021

_Larry A. Burns_
Honorable Larry Alan Burns
United States District Judge